**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

BRIAN HARDY,                    :
                                :   Civil Action No. 06-2984 (RBK)
        Petitioner,             :
                                :
        v.                      :   **OPINION**
                                :
N.J. STATE PAROLE BOARD,        :
                                :
        Respondent.             :

**APPEARANCES:**

| | |
|---|---|
| Petitioner <u>pro se</u> | Counsel for Respondents |
| Brian Hardy | Lisa A. Puglisi |
| South Woods State Prison | Deputy Attorney General |
| 215 Burlington Road (South) | R.J. Hughes Justice Complex |
| Bridgeton, NJ 08302 | 25 Market Street |
| | P.O. Box 112 |
| | Trenton, NJ 08625 |

**KUGLER**, District Judge

Petitioner Brian Hardy, a prisoner currently confined at South Woods State Prison in Bridgeton, New Jersey, has submitted a "Motion," [Docket Entry No. 1], which this Court has construed as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  By Letter [Docket Entry No. 5], Petitioner advised this Court to proceed with that Petition as filed.  The sole respondent is the New Jersey State Parole Board.[1]

---

[1] Respondent has asserted that it should be dismissed as a respondent because it is not Petitioner's custodian for purposes of § 2254.  Because of the disposition of this Petition, this Court need not reach this issue.

For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

The relevant facts and procedural history are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[2]

> Following a guilty plea to first-degree aggravated manslaughter, appellant was sentenced on June 24, 1993, to a twenty-eight year term of imprisonment.  Appellant was previously denied parole on May 24, 1999, June 13, 2000, and February 1, 2002.  On July 24, 2003, a two-member panel again denied parole, and established a twenty-seven month FET.  Appellant appealed to the Board.  The Board affirmed the panel's denial, agreeing with the panel's determination that the nature of his criminal record was becoming more serious, he lacked insight into his criminal behavior, and he minimized his conduct.
>
> On appeal, appellant argued that the Board's decision was not supported by substantial, credible evidence in the record, and "because his offense occurred prior to the 1997 amendment to N.J.S.A. 30:4-123.56, the Board can only consider information developed subsequent to his last parole hearing." Hardy v. N.J. State Parole Bd., No. A-1281-03T1 (App. Div. Oct. 5, 2004) (slip op. at 3).  Appellant contended that because he had been infraction-free since his last parole hearing, the Board was required to grant parole.  Ibid.  We agreed with appellant's argument that the pre-1997 parole standard of N.J.S.A. 30:4-123.56(c) was applicable to his case, citing Williams v. New Jersey State Parole Board, 336 N.J. Super. 1 (App. Div. 2000).  However, we affirmed the Board's decision denying parole, and rejected the

---

[2] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

argument that the Board was restricted to considering only information developed subsequent to appellant's last parole hearing "because the amendment permitting evidence of prior information was a procedural change, it did not represent a constitutional violation of the ex post facto clause." Hardy, supra, slip op. at 4. Accordingly, we held that the Board "was not precluded from considering pertinent information developed prior to Hardy's last parole hearing." Id. at 5.

Appellant's prior criminal history consists of a 1979 conviction for assault with a deadly weapon and for carrying a concealed weapon. Following release on probation, appellant was convicted on November 15, 1982, of violation of probation. On September 7, 1991, defendant was convicted of resisting arrest. On March 13, 1992, appellant was convicted of a fourth-degree sexual assault charge. In addition, between the convictions, appellant was charged with other criminal offenses which were subsequently dismissed. While in prison, appellant has not committed any infractions since 2001. He has completed programs in Alcoholics Anonymous, Narcotics Anonymous, Self-Counseling, Encounter Group, Behavior Modification I and II, Anger Management, Christian Group, Veteran's Alcoholics Anonymous, and obtained a High School Equivalency Diploma.

On October 21, 2004, appellant underwent an in-depth psychological evaluation in anticipation of his scheduled parole hearing. On November 23, 2004, a two-member panel considered appellant's case, including an interview of appellant. During the hearing, although appellant stated that he took full responsibility for the crime, attributing his actions to a "substantial error in judgment," he could not state why he committed the crime or how it occurred.

The panel denied parole, and based its decision on: appellant's "[p]rior criminal record;" the "nature of [appellant's] criminal record [was becoming] increasingly more serious;" "[p]rior opportunity(ies) on ... probation ... have failed to deter criminal behavior;" "[p]rior opportunity(ies) on ... probation ... have been violated in the past;" and "[i]nsufficient problem(s) resolution," specifically, a "[l]ack of insight into criminal behavior," he "[m]inimizes conduct," and his {[s]ubstance abuse

3

problem has not been sufficiently addressed" as demonstrated by the panel's review of documentation in the case file and confidential material.  In fixing a twenty-seven month FET, the panel suggested that appellant should consider participating in "[s]ubstance abuse counseling," "[b]ehavior modification," and [o]ne[-]to[-]one counseling."  Following appellant's administrative appeal, the Board by letter of March 9, 2005, affirmed the panel's decision denying parole and establishing a twenty-seven month FET:

> The full Board found that the Panel appropriately denied you parole based upon the fact that you have four prior criminal convictions and that the nature of your criminal record is increasingly more serious.  In addition, according to the Pre-Sentence Investigation Report, you have experienced prior probation in 1977 and 1978, and sustained a violation of probation in 1982, which failed to deter your criminal behavior.  The Panel determined that you lack insight into your criminal behavior, that you minimize your conduct[,] and that your substance abuse problem has not been sufficiently addressed, as evidenced by their interview with you and documentation in the file, including confidential information.  Of concern is the fact that you have an alcohol problem since age 14[,] and committed the present offense while uner the influence of alcohol.  Although you have participated in institutional programs, more programming is needed.
>
> ...
>
>     Be advised that regardless of whether it is a subsequent review, the Panel can consider the entire record, including prior criminal history.  Pursuant to amendments to the Parole Act of 1979, the Board Panel is not limited to considering only new information.  At each instance of parole consideration, the Board may consider the entire record.
>
> ...
>
>     Appellant argues that under the Parole Act of
1979, the Board improperly denied him parole because the Board's decision was based on the same factors that

4

> the Board used to deny him parole previously.
> Appellant argues that because he has been free of any
> institutional infractions since his last review, the
> Board was required to grant parole.  We disagree.
> These are the same arguments previously rejected by
> this Court.  <u>Hardy</u>, <u>supra</u>, slip op. at 3; <u>see also</u>
> <u>Trantino v. N.J. State Parole Bd.</u>, 331 N.J. Super. 577,
> 607-11 (App. Div.) (holding that the Parole Board was
> not constrained in considering only information that
> developed since an inmate's last parole hearing and
> consideration of information pre-dating the last parole
> hearing "did not violate the <u>ex post facto</u> clause since
> this change in the law is a procedural modification
> that does not constitute a substantive change in the
> parole release criteria"), <u>aff'd in part, modified in
> part on other grounds</u>, 166 N.J. 113, <u>modified on other
> grounds</u>, 167 N.J. 619 (2001).  Accordingly, we
> determine that the Board's decision in denying parole
> was not arbitrary, capricious, or unreasonable, and is
> supported by credible evidence in the record.  We also
> find the imposition of a twenty-seven month FET is in
> accordance with N.J.A.C. 10A:71-3.21(a)1, which
> provides that when the Board denies parole to an inmate
> serving a sentence in excess of fourteen years, the
> standard FET is twenty-seven months.

(Answer, Ex. Ra45 at Ra46-53 ; <u>Hardy v. New Jersey State Parole Board</u>, 2006 WL 1714727 (N.J. Sup. App. Div. June 23, 2006.)

Following the decision of the Appellate Division affirming the State Parole Board, Petitioner did not file in the Supreme Court of New Jersey a petition for writ of certification. Instead, Petitioner filed in this Court the Motion, which has been construed as a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  In it, Petitioner contends that the State Parole Board is applying to him, in violation of the Ex Post Facto Clause, a 1997 amendment to the parole statutes permitting consideration of an "In Depth Pre-Parole Psychological

5

Evaluation." Petitioner challenges both the most recent denial of parole and the request, in anticipation of his upcoming parole proceedings, that he again undergo in-depth psychological evaluation. Thus, he seeks an order compelling the State Parole Board to comply with pre-1997 law permitting consideration only of "new" information developed since his most recent prior parole hearing and precluding consideration of in-depth psychological evaluations.

Respondent has answered asserting that the Petition should be dismissed as unexhausted or denied as meritless. Petitioner has not filed a reply.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>      (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application

7

of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits

8

notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.   ANALYSIS

#### A.   Exhaustion of State Court Remedies

Respondents contend that Petitioner did not exhaust his state court remedies, because he did not petition the Supreme Court of New Jersey for a writ of certification.

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ."  28 U.S.C. § 2254(b)(1).  See also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v.

9

Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").

A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied.

Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts establishing exhaustion. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition. Picard, 404 U.S. at 275. Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same. Id. at 277.

Alternatively, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

Petitioner has not replied to Respondent's assertion of the defense of non-exhaustion. Neither has Petitioner suggested any basis for excusing exhaustion. Accordingly, this Petition is subject to dismissal for failure to exhaust state remedies. In the alternative, because Petitioner's claims are meritless, this Court will exercise its discretion to deny the Petition. See 28 U.S.C. § 2254(b)(2).

B.   The Ex Post Facto Claim

Petitioner contends that the State Parole Board violated the Ex Post Facto Clause by considering all information in his file, rather than just "new" information developed since his most

11

recent prior parole hearing, and by requiring him to submit to a psychological evaluation. Petitioner also seeks to avoid such psychological evaluations in the future.

Article I, Sections 9 and 10, of the United States Constitution, prohibit the federal and state governments from passing any "ex post facto Law." In Collins v. Youngblood, 497 U.S. 37, 41 (1990), the Supreme Court reaffirmed that the Ex Post Facto Clause incorporates "a term of art with an established meaning at the time of the framing of the Constitution." Specifically, the Clause is aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Id. at 43 (citations omitted). The Supreme Court has noted that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." Garner v. Jones, 529 U.S. 244, 250 (2000) (citations omitted). "Whether retroactive application of a particular change in parole law respects the prohibition on ex post facto legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account." Id.

In 1995, the Supreme Court considered the constitutionality of a California parole amendment that had no effect on the standards for fixing a prisoner's initial date of eligibility for parole or for determining his suitability for parole, but only permitted the Board of Prison Terms to decrease the frequency of

12

parole suitability rehearings, for prisoners who have been convicted of more than one offense involving the taking of a life, from annual hearings up to hearings every three years. In addition, the California law permitted requests for earlier reconsideration based upon a change in circumstances. See California Dept. of Corrections v. Morales, 514 U.S. 499 (1995). Rejecting the argument that the California amendment violated the Ex Post Facto Clause, the Supreme Court emphasized that "the question of what legislative adjustments 'will be held to be of sufficient moment to transgress the constitutional prohibition' must be a matter of 'degree.' In evaluating the constitutionality of [an amendment to parole law], we must determine whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Morales, 514 U.S. at 509 (citations omitted) (emphasis in original).

Five years later, the Supreme Court revisited this issue in reviewing a Georgia statute that altered the parole reconsideration period, for prisoners serving life sentences, from three years to "at least every eight years." See Garner, 529 U.S. at 247 (reversing and remanding for further consideration lower court determination that amendment was necessarily an ex post facto violation based, in part, upon lower court's refusal to consider Parole Board's internal policies regarding implementation of the amendment). The Court considered

13

the amendment within the whole context of Georgia's parole system, noting particularly the "broad discretion" the Parole Board possessed in determining whether an inmate should receive parole. Id. at 252-53.

> The presence of discretion does not displace the protections of the Ex Post Facto Clause, however. The danger that legislatures might disfavor certain persons after the fact is present even in the parole context, and the Court has stated that the Ex Post Facto Clause guards against such abuse. On the other hand, to the extent there inheres in ex post facto doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression, we can say with some assurance that where parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

Garner, 529 U.S. at 253 (citations omitted). The Court noted that the amended reconsideration statute granted the Parole Board discretion as to how often to set an inmate's reconsideration hearing, with a maximum of eight years, and that the Parole Board's policies permitted expedited reconsideration in the event of a change of circumstances or receipt of new information. Id. at 254. "The policy enables the Board to put its resources to better use, to ensure that those prisoners who should receive parole come to its attention. By concentrating its efforts on those cases identified as having a good possibility of early

release, the Board's Rules might result in the release of some prisoners earlier than would have been the case otherwise." Id. Remanding for further proceedings, the Supreme Court emphasized that a prisoner challenging a parole amendment on ex post facto grounds must show that "as applied to his own sentence the law created a significant risk of increasing his punishment. This remains the issue in the case, though the general operation of the ... parole system may produce relevant evidence and inform further analysis on the point."  529 U.S. at 255.

    Here, under the New Jersey 1979 Parole Act, in effect at the time of Petitioner's offense and conviction, and thus governing his eligibility for parole, the standard for parole is that an inmate shall be released on parole unless, "by a preponderance of the evidence ... there is a substantial likelihood that the inmate will commit a crime under the laws of this state if released at such time."  N.J.S.A. 30:4-123.53(a).  Pertinent factors that the Parole Board may consider in determining whether an inmate should be released on parole include, among others, facts and circumstances of the offense, aggravating and mitigating factors surrounding the offense, participation in institutional programs, statements by institutional staff (with supporting documentation) that the inmate is likely to commit a crime if released on parole, and statements by the inmate reflecting the likelihood that he or she will commit another

15

crime.  "The report ... shall include a complete report on the inmate's social, physical and mental condition ... ."  N.J.A.C. 10A:71-3.11(b).

Correctional staff are required to file a pre-parole report with the Parole Board prior to the parole eligibility date of each adult inmate.  N.J.S.A. 30:4-123.54(b)(1).  The Parole Act of 1979 further provides:

> An inmate shall be released on parole on the new parole eligibility date unless <u>new</u> information filed pursuant to [N.J.S.A. 30:4-123.54] indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time.

N.J.S.A. 30:4-123.56(c) (emphasis added).

Under the 1997 Parole Act, enacted during Petitioner's incarceration, Section 30:4-123.56(c) was amended to delete the word "new," thus permitting the State Parole Board to consider all information in the inmate's file, not just "new" information developed since the most recent prior parole hearing.  In addition, a new provision on psychological evaluation was added.

> At any time while an inmate is committed to the custody of the Commissioner of Corrections, the appropriate board panel or the Parole Board may require, as often as it deems necessary, that inmate to undergo an in-depth preparole psychological evaluation conducted by a psychologist.

N.J.S.A. 30:4-123.52(d).  These are the provisions to which Petitioner objects.

16

The New Jersey courts have considered whether the 1997 amendment to Section 30:4-123.54(c) violates the Ex Post Facto Clause.  See Trantino v. New Jersey State Parole Board, 331 N.J. Super. 577 (N.J. Super. App. Div. 2000), modified in part on other grounds, aff'd in part, remanded, 166 N.J. 113 (2001).  The Appellate Division specifically held that the 1997 amendment:

> did not violate the Ex Post Facto Clause since this change in the law [was] a procedural modification that [did] not constitute a substantive change in the parole release criteria. ...  We conclude that the 1997 statutory amendment does not modify the parole eligibility standard ...; rather, it simply allows the Board to consider all available evidence relevant to the application of that standard.  We find no ex post facto violation.

331 N.J. Super at 610 (citing, inter alia, Morales, 514 U.S. 499, and Beazell v. Ohio, 269 U.S. 167 (1925)).

Similarly, the provision permitting the Board to order inmates to participate in a psychological evaluation does not alter the parole standard; it merely allows the board to consider information relevant to the application of that standard.

Instead, these provisions merely provide that the Board's discretion shall be exercised through the utilization of more complete information.  Thus, there does not inhere in these provisions any likelihood that the Board's discretion will be exercised in a manner detrimental to this Petitioner's, or any inmate's, interests in release on parole.  These provisions do not violate the Ex Post Facto Clause.  The decision of the

17

Appellate Division is neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  Petitioner is not entitled to relief.  See Jenkins v. D'Amico, 2007 WL 1797649 (D.N.J. 2007); Oliver v. New Jersey State Parole Board, 2007 WL 923516 (D.N.J. 2007).  Cf. Brooker v. Warden, 1999 WL 813893 (D.N.H. 1999) (addition of sexual offender programs to the considerations used for parole does not violate the Ex Post Facto Clause).

### IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows,

at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find it debatable that the Petition is not exhausted.  In addition, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## V.   CONCLUSION

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

S/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: March 17, 2008